Let's move to the fifth case, Viramontes v. City of Chicago. Thank you. May it please the court, my name is Jerry Cossagled here on behalf of William Viramontes. Mr. Viramontes was charged in state court with three crimes, mob action, resisting arrest, and aggravated assault. He was convicted of two of those crimes, aggravated assault and resisting arrest, and he subsequently brought a lawsuit under 42 U.S.C. 1983 for excessive force and malicious prosecution on the mob action charge. During the trial, the district court instructed the jury on the preclusive effects of the misdemeanor criminal convictions, and we believe and submit that the district court did it improperly. So in order to obtain a new trial based on an erroneous jury instruction, the appellant must show that the jury instruction misguided the jury and caused some kind of prejudice. In this case, the district court instructed the jury that the jury was to take certain facts as proven and unrebuttable, except that that isn't the law in Illinois. Congress has instructed the federal courts to give the same preclusive effect to a state court judgment that the state court would give it, and under Illinois law, a state court gives a misdemeanor conviction the preclusive effect that it is, it creates a prima facie evidence of the facts that are essential to the judgment. Those facts are rebuttable in a federal case. In this case, the district court did not allow for that, and that was really important here, because even though the defendants had accused Mr. Viramontes of swinging and missing and resisting arrest, there was another police officer on the scene, Officer Bregel, who was not, the information she possessed was not disclosed during the criminal case and was not available to the defendant, and she said there was no swing. She saw no swing, and she was there the entire time. Sorry, can you back up a second? Yep. Mr. Casaglad, you were just talking about the Illinois law of collateral estoppel for misdemeanor offenses. Yes. Is that in the briefs? It is, Your Honor. Maybe I missed it. It's cited in the reply brief at page 2 and 3, and the cases we found were the Rodriguez v. Schweiger case and the Kalasinski v. Kruger case. We argued in the district court. So it was first raised in your reply brief? Those cases were first cited in the reply brief, correct. Well, was the basis of the misdemeanor effect of the conviction cited? In other words, you couldn't use it as non-rebuttal? Yes, yes. Where? The basis of the conviction. The argument that we made in the brief was that the court misconstructed the jury on the basis of the conviction by saying that he actively resisted and swung back a closed fist and missed. And I think we put in the criminal complaints into our appendix because that's the factual basis for the plaintiff's convictions in the misdemeanor court, which was that he pulled his arm away and that he swung back a closed fist. That's the most narrow factual basis for his convictions, and that's what we offered to be bound by during the trial of this case. But the district court took commentary from the state court criminal judge and applied it as law and said you are now bound to what the state court's commentary was in finding Mr. Viramonte's guilty. So preliminarily you objected to the instruction given? Absolutely, Your Honor. The defendants filed a motion to eliminate, seeking to bar the plaintiff from testifying and offering evidence that was in conflict with the conviction, and the district court in its ruling decided to give a Gilbert instruction about five days before trial. And in response to that, the day that voir dire was conducted, we objected. We submitted different jury instructions to the court to try to suggest that we be bound by the most narrow basis of the conviction, and those arguments were rejected, and the district court decided to follow what the state court criminal judge had said orally during her finding the plaintiff guilty. But as the defendant's brief sort of elucidates, they don't cite any authority for using that kind of commentary to preclude the plaintiff from arguing facts in a civil rights case. And, indeed, there is not, because that's not the law. Mr. Koskowitz, I thought the plaintiff's theory was that, in essence, he had stopped resisting and then was beaten up by the police officers. Is that right? Somewhat, yes, Judge. I mean, the plaintiff's theory, I mean, the plaintiff himself would say, I wasn't resisting. He was convicted of resisting. Right, and for pulling his arm away. And there's a video that shows him pulling his arm away. The officer has his hand on the plaintiff's cell phone, and the plaintiff's pulling the other way. There's an actual video of that happening. And so there's nothing inconsistent with what the plaintiff said that would be inconsistent with what he was convicted of, which was pulling his arm away. It may seem odd, but that… Let me back up. Okay. I thought the theory was that excessive force was used against him after he had stopped resisting. Correct. Okay. That theory was presented to the jury, right? That's why there was a trial. The theory was presented, correct. Okay. So why did the details of the earlier incident matter before he stops resisting? So in the criminal court, the defendants testified that he…to a certain version of the facts. And there was a video presented, which occasioned the police officers to change their story to conform to the video evidence. And at the civil rights trial, the district court instructed the jury that plaintiff actively resisted arrest. Now, that is problematic from our point of view because that's not what he was convicted of. I mean, legally, yes, he was convicted of resisted arrest, but the facts that he was convicted of was pulling his arm away. The state's theory during the criminal case was that the resistance was pulling his arm away from the arrest. That was what was presented. That is what he should have been bound by. Nothing more. They later amended their story and their theory to say that he resisted the entire time, which is fine. They're allowed to. But the district court, and we can impeach them, but the district court told the jury that he was actively resisting arrest. So we weren't allowed to present evidence in contradiction to that, which included impeachment of the defendants changing their story. We were actually prevented from impeaching the police officers who changed their story during the trial because of this court's jury instruction. And we were not allowed to present the plaintiff's own version of what happened, in fact, based on the court's jury instruction. So for this reason, we believe this instruction causes a great deal of prejudice. We were actually unable to pursue the theory because if the jury followed the court's instruction and believed the plaintiff was actively resisting arrest, which, according to the district court, it must have found, well, then it could have found. Is there a difference between resisting arrest and actively resisting arrest? Well, no, I don't think so. Okay, and he's convicted of resisting arrest. Right, for pulling his arm away. The excessive force allegedly happened after that. Right. And the district court instructed the jury that he was resisting during that time period. Okay, how do you get the last part of that? Because the instruction was, I find that Mr. Viramonte swung at a police officer and missed and then actively resisted arrest. And we attempted to ask during the criminal trial, to the officers, you changed your story. You never testified that he resisted after he swung. It was a sustained objection. We weren't allowed to present that impeachment because they had, in fact, changed their story to conform to the evidence. But wasn't the relevant force after he'd stopped resisting? Yes. Okay, so why do those earlier details matter? Well, because we weren't allowed to. The earlier details aren't as significant as the fact that the district court said he then actively resisted arrest. That is important because that is telling the jury that the officers had a basis to use force while he was underneath a pile of eight police officers against him. They told him there would be some justification for force used here. But there was no basis for that in the criminal record. He wasn't convicted of doing anything underneath the pile of eight police officers. He was convicted of pulling away while they were trying to arrest him. And your argument is he didn't pull away? No, he did pull away. It's on video. But that can't form the basis for the force that they used while he was handcuffed and underneath a pile of police officers. There was other evidence offered to that, and we were not allowed to contradict that meaningfully because the district court told the jury that he was then actively resisting, which really defines nothing for a jury. I mean, that leaves it to their imagination and basically says, well, you have to believe whatever the defendants say is true because they're the ones saying that he resisted arrest. And that's not fair. The second part of this that we think was unfair was the closing argument by the defense counsels in abusing highly prejudicial evidence that was admitted under Rule 609 for the limited purposes of credibility. And it was abused intentionally to make a 404 propensity argument that the plaintiff is unable to conform his conduct to the law. And I know the standards are very high for us in this respect on closing argument issues, but we would ask the court to reverse the judgment of the district court. I see my time has expired. Thank you. Mr. Collins? May it please the court. Neither the Gilbert instruction nor defense counsel's statements at closing argument provides a basis for a new trial, and I'll address each issue in turn. First, the Gilbert instruction. As a preliminary matter in our brief, we argued that Mr. Viramontes did not make a timely objection in the district court. And we made that argument based on the record that Mr. Viramontes had made at the time we filed. In response to that argument, Mr. Viramontes has provided an additional transcript. And based on that, the record now reflects a timely objection. Nonetheless... How did you get an additional transcript? Mr. Viramontes ordered that transcript from the court reporter after... What was the first transcript? It was from a different portion of the trial. That was the extent of what he had ordered when we filed. Nonetheless, Mr. Viramontes has waived this issue on appeal because his argument in his opening brief was unsupported. And on the merits, the Gilbert instruction was proper. The criminal court found that Mr. Viramontes swung at a police officer and then actively resisted. Heck, bars Mr. Viramontes from challenging those findings in his civil suit. Was the sequence of events important in the state criminal trial? It was in the sense that that was what the criminal court found happened. But I thought we were supposed to take a fairly narrow approach to heck and just look at elements of the offenses. What was necessary for the finding? And the sequence is important in this case, Your Honor, because Mr. Viramontes' version of events is that all he did was pull back his arm. And that was the extent of his action. So that version of events contradicts the sequence that the criminal court found. And what was the aggravated assault for? For swinging at a police officer. And that was the other finding that the criminal court made. But why does the sequence matter in the criminal court? Because the version of events that Mr. Viramontes wanted to present to the jury in the civil suit was that all he did was pull back his arm. And so that contradicts what the criminal court found, which is that there are two distinct events here. First is the swinging at the police officer. And second is the act of resistance. And so heck bars Mr. Viramontes from presenting the version of events that he wanted to go to trial on. And for that reason, even setting aside the Gilbert instruction, a reband for a new trial here is especially unwarranted because the claim that Mr. Viramontes wants to pursue in a new trial is heck bars. Why did Judge Kendall indicate, do you think, that she thought more guidance was needed from this court on this heck issue? Your Honor, I'm not sure. Our position is that the district court implemented Gilbert perfectly and that there's absolutely no basis for reversal on the question of how she implemented Gilbert. Second, and just briefly with respect to the statements at closing argument, Mr. Viramontes objected immediately to those statements. The district court sustained the objection, both objections, and also gave an instruction to the jury that the attorney's statements at closing argument are not evidence. Is there any doubt that the arguments made were contrary to the district judge's ruling in limine? No, Your Honor. The district court found that the statements did go against the pretrial orders. And against basic rules of evidence, 609 and 404? Correct. So, I've got to say, I found this part of this case very, very troubling. Or it seems as if city attorneys are, I hope, not making a habit of this sort of thing? Well, Your Honor, Mr. Viramontes, in his motion for a new trial, did present the argument that this was an intentional violation, to use his word. And the district court, nonetheless, denied the motion for a new trial. Did the district court reject the idea that this was intentional? The district court did not expressly address that argument. You've argued that this would be subject to abusive discretion review. And, frankly, I agree with that. But, so if that's the case, and we've got city attorneys defending police officers by violating quite clear orders in limine and basic rules of evidence, would it be an abusive discretion for another district judge in a similar situation to take more severe action, such as ordering a new trial? Your Honor, I believe that would just depend on the facts of this other case. How about the facts of this case? In the facts of this case, certainly not. Why not? Because, well, I was not personally present for the trial. The district court was. And the district court was in the best position to determine whether there was intentional violation. All right. I understand that Judge Kendall decided she didn't need to order a new trial here. But what I'm trying to suggest is that other district judges might see that differently. And that would also not be an abusive discretion. And, in fact, it would not be an abusive discretion to sanction the city by ordering it to pay the costs of the new trial. Since those judgments are within the discretion of the district court, certainly discretion allows for decisions on either side of the issue. I agree with that, Your Honor. There's no ---- I mean, the fact of the matter is these are separate district judges doing separate things. Precisely. And they're not controlled by ---- Certainly. It's a fact-based determination. What I'm suggesting is that that practice needs to stop. Certainly, Your Honor. And if there are any further questions or if there are no further questions, we ask that the judgment below be affirmed. Thank you. I have a question. I'll give you a minute. Thank you, Judge. The reason that Judge Kendall asked for guidance from the Seventh Circuit on the Gilbert instruction is because, frankly, everybody missed it. We missed it. The defense missed it. The judge missed it in terms of how this was supposed to be appropriately implemented. Nobody did this on purpose. It just wasn't done correctly in terms of giving the proper preclusive effect to the state court judgment. And the judge relied on the commentary of the state criminal judge to find what the facts were as opposed to the evidence offered during the trial. And that's why I think the judge wanted more guidance. Is it your position, counsel, that because Illinois treats the misdemeanor findings as only prima facie evidence, that, in fact, Heck doesn't bar such a claim at all? Heck doesn't bar a claim of excessive force because Mr. Viramontes resisted or swung at a police officer. No, that's not what I'm saying. But are you contending that because of Illinois state law, you can bring a case that would flatly contradict essential elements of the misdemeanor conviction finding? I'm not contending that here, no. Good. Okay. I didn't think so. At the end of the day, your honors, we just feel like people who bring cases, civil rights cases, in the district courts ought to walk out the door with a feeling that they were treated fairly by everyone involved in the process. And that didn't happen here. Thank you. Thank you, counsel. Thanks to both counsel. The case is taken under.